IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS P. SWEENEY, | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| THE STANDARD INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | NO. 02-4043 |

### MEMORANDUM

**Baylson, J.**  August 13, 2003

Dennis P. Sweeney ("Plaintiff") filed this action for damages arising out of the denial of long-term disability insurance benefits by The Standard Insurance Company ("Defendant"), allegedly in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*. ("ERISA"). Defendant moved for summary judgment and Plaintiff moved for partial summary judgment. The Court must decide: (1) what level of scrutiny to apply to Defendant's denial of benefits under the heightened arbitrary and capricious standard of review, and (2) whether Defendant's denial was arbitrary and capricious under that standard.

Oral argument was held on July 25, 2003. For the reasons set forth below, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Partial Summary Judgment.

### I.   Factual and Procedural Background

Prior to developing health problems, Plaintiff was employed as the Vice President and General Manager of the Radio Frequency Division of Microsemi Corporation in Montgomeryville, Pennsylvania. (Pl.'s Am. Compl. ¶ 4; Def.'s Mem. Supp. Mot. Summ. J. at 3.)

In this position, Mr. Sweeney oversaw manufacturing and operations at several Microsemi plants. (Def.'s Mem. Supp. Mot. Summ. J. at 3-4.) Plaintiff alleges that he became totally disabled in September 2000 due to cardiovascular disease, ischemic colitis, severely diffused gastritis, persistent leukocytosis, Barrett's esophagus, depression, bipolar disorder, and post-traumatic stress disorder. (Pl.'s Am. Compl. ¶ 4.) Plaintiff had been receiving treatment for these conditions in one form or another from his primary care physician and multiple psychiatric specialists for more than a year. (Pl.'s Mem. Supp. Mot. Partial Summ. J. at 9-10; Def.'s Mem. Supp. Mot. Summ. J. at 7.) Plaintiff stopped working on October 1, 2000, but was paid by Defendant as a consultant through March 20, 2001. (Pl.'s Am. Compl. ¶ 9.)

At the time Plaintiff allegedly became disabled, Microsemi Corporation was the policyholder of a Group Long Term Disability Insurance Policy issued by Defendant (the "Policy"). (Pl.'s Am. Compl. ¶ 5.) As a full-time employee, Plaintiff was a covered person and beneficiary under the Policy and a participant in the Microsemi Corporation benefits plan, which provided the disability coverage through the Policy.[1] Id. ¶ 6. On April 2, 2001, Plaintiff applied

---

[1] The Policy provides a policyholder with long term disability benefits up to age 65, if the participant meets its definition of disability, as follows in pertinent part:

> During the Benefit Waiting Period and the Own Occupation Period you are required to be Disabled from your Own Occupation.
>
> You are Disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of your Own Occupation.
>
> * * * * * * *
>
> Own Occupation means any employment, business, trade, profession, calling or vocation that involves Material Duties of the same general character as your regular and ordinary employment with the Employer. Your Own Occupation is not limited to your job with your Employer.

for long term disability benefits under the Policy. (Def.'s Mem. Supp. Mot. Summ. J. at 6.) If approved, Plaintiff, now 57 years old, would receive $6,600 in monthly disability benefits until he turns 65. His application was supported by Attending Physician Statements from Dr. Ralph Primelo, his current psychiatrist, and Dr. John Nuschke, his primary care physician. Id. Defendant denied Plaintiff's claim on September 7, 2001, finding that he had not established that he was unable to work in his Own Occupation. (Pl.'s Am. Compl. ¶ 14.)

On November 1, 2001, Plaintiff requested that Defendant reconsider its decision and submitted additional material from his doctors and counselor in support of his claim. Id. ¶¶ 15-16. In January 2002, Defendant affirmed its denial of Plaintiff's claim after reviewing additional medical records received from Dr. Yelena Yermak, the psychiatrist who had treated Mr. Sweeney prior to Dr. Primelo. (Def.'s Mem. Supp. Mot. Summ. J. at 15.) In February 2002, Defendant reviewed yet more medical records in support of Plaintiff's claim, provided this time by Ms. Janet Grossner, a social worker counseling the Plaintiff. The Defendant denied Plaintiff's claim for a third time and referred his case to its Quality Assurance Unit for an independent review. Id. at 16-17. In June 2002, after having two physicians review Plaintiff's claim, the Quality Assurance Unit affirmed the decision to deny Plaintiff benefits. Id. at 20.

The Policy gives Defendant the right to administer claims, to interpret the Policy, and to resolve all questions arising in its administration, including the right to determine entitlement to benefits. (Pl.'s Am. Compl., Ex. 1.) Plaintiff filed this action under ERISA, 29 U.S.C. § 1132.

---

> Material Duties means the essential tasks, functions and operations, and the skills abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation.

(Pl.'s Am. Compl., Ex. 1.)

(Pl.'s Am. Compl. ¶ 18.) He claims damages for loss of past and future disability benefits, in excess of $80,000. Id. ¶ 20.

Presently before the Court are Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment.

## II. Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

### III.  Discussion

Defendant argues that its decision to deny Plaintiff's claim is supported by substantial evidence and, therefore, must be affirmed under the arbitrary and capricious standard of review. (Def.'s Mem. Supp. Mot. Summ. J. at 24.) Defendant claims that its decision was free of procedural abnormalities that would increase the level of scrutiny under the heightened arbitrary and capricious standard of review. Id. at 31. Defendant allegedly based the denial of benefits on contemporaneously recorded chart notes from Plaintiff's treating physicians. It contends that the records show that Plaintiff's health improved significantly, both before and after his departure from Microsemi Corporation, and establish that Plaintiff is not disabled. Id. at 24.

Plaintiff claims in support of his own Motion for Partial Summary Judgment, and in opposition to Defendant's Motion, that there were several procedural abnormalities in Defendant's review process that require the Court to employ a highly skeptical version of the heightened arbitrary and capricious standard. (Pl.'s Mem. Supp. Mot. Partial Summ. J. at 1, 8.) Plaintiff argues that, under this standard of review, the medical records available to Defendant actually supported his disability claim and that Defendant's interpretation of them was arbitrary and capricious. (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 2, 10.)

    **A.**    **Standard of Review**

        **1.**    **The Defendant's Decision Should Be Reviewed under the Arbitrary and Capricious Standard**

The Plaintiff's action comes under ERISA, 29 U.S.C. § 1132(a)(1)(B), which provides a

federal cause of action for suits to recover benefits under employee benefit plans or to enforce the terms of such plans. Although ERISA does not set forth the standard of review for an action brought under 29 U.S.C. § 1132(a)(1)(B), the Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Mitchell v. Eastman Kodak Co., 113 F.3d 433, 437 (3d Cir. 1997) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989)). If the administrator or fiduciary is given discretionary authority, an "arbitrary and capricious standard" of review applies to the decision of the administrator or fiduciary. Smathers v. Multi-Tool, Inc., 298 F.3d 191, 194 (3d Cir. 2002). See also McElroy v. SmithKline Beecham, No. 02-3421 (3d Cir. Aug. 6, 2003). In the instant case, the parties agree that the Policy provided the Defendant with discretionary authority to which the arbitrary and capricious standard applies. (Def.'s Mem. Supp. Mot. Summ. J. at 22; Pl.'s Mem. Supp. Mot. Partial Summ. J. at 4.)

Under the arbitrary and capricious standard, "a plan administrator's decision will be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan. A court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." Smathers, 298 F.3d at 199 (quoting Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc., 222 F.3d 123, 129 (3d Cir. 2000)). Furthermore, "whether a claim decision is arbitrary and capricious requires a determination 'whether there was a reasonable basis for [the administrator's] decision, based upon the facts as known to the administrator at the time the decision was made.'" Id. at 199-200 (quoting Levinson v. Reliance Std. Life Ins. Co.,

245 F.3d 1321, 1326 (11th Cir. 2001) (internal quotations omitted)).

### 2. The Court Should Apply a Heightened Form of the Arbitrary and Capricious Standard of Review

Plaintiff claims that Defendant has an inherent conflict of interest as administrator of the Policy because Defendant is outside of the employer company and does not have strong incentives to keep employees satisfied by granting meritorious claims. (Pl.'s Mem. Supp. Mot. Partial Summ. J. at 5.) Plaintiff argues that the Court should apply a heightened form of the arbitrary and capricious standard, see Pinto v. Reliance Std. Life Ins. Co., 214 F.3d 377 (3d Cir. 2000), in reviewing Defendant's decision to deny Plaintiff's claim. Id. Defendant agrees that the court should apply the heightened form of the arbitrary and capricious standard in this case because it funds and administers the disability plan. (Def.'s Mem. Supp. Mot. Summ. J. at 24.)

In Pinto, the Third Circuit adopted the "sliding scale" approach to the heightened arbitrary and capricious standard, which allows each case to be examined on its facts. 214 F.3d at 379, 392. Under this approach, the intensity of review should increase in proportion to the intensity of the conflict. Id. In measuring the degree of scrutiny, courts may take into account the following factors: (1) sophistication of the parties; (2) the information accessible to the parties; (3) the exact financial arrangement between the insurer and the company; and (4) the current financial status of the fiduciary. Id. at 392. In applying the heightened arbitrary and capricious review to the facts in Pinto, the Third Circuit stated that courts should "look not only at the result – whether it was supported by reason – but at the process by which the result was received." Id. at 393. A court should intensify the level of scrutiny it applies to an insurer's decision if there were any procedural irregularities in the decision-making process. Id. at 394.

B.  **The Court Finds <u>Pinto</u> Requires Application of the Heightened Arbitrary or Capricious Standard to the Facts**

Plaintiff alleges that Defendant committed a number of errors in its review of his disability claim, including: (1) denial of Plaintiff's claim without review of all medical evidence; (2) failure to consider the impact of stress on Plaintiff's ability to work; (3) crediting opinions of non-treating physicians over those of treating physicians; (4) obtaining a vocational report that failed to account for the stress of Plaintiff's job; and (5) misinterpreting the medical charts. (Pl.'s Mem. Supp. Mot. Partial Summ. J. at 7.) As the parties acknowledged at oral argument, these alleged irregularities bridge and blur the divide between procedure and substance. Consequently, they impact the analyses of whether the Court should take a skeptical view of Defendant's decision under <u>Pinto</u> and whether the Defendant's decision was arbitrary and capricious.

As discussed below, to the extent that the irregularities Plaintiff alleges are procedural, they do not compel the Court to slide the level of scrutiny to the highly skeptical end of the arbitrary and capricious range. Thus, although the Court applies a heightened standard of review to account for Defendant's conflict of interest as administrator and funder of the Policy, it employs a moderate intensity of scrutiny and remains deferential to Defendant's determination. <u>See</u> <u>Sapovits v. Fortis Benefits Ins. Co.</u>, No. CIV.A.01-3628, 2002 WL 31923047, at *16 (E.D. Pa. Dec. 30, 2002). To the extent that the alleged flaws are substantive, the facts known to Defendant at the time it denied Plaintiff's disability claim provided a reasonable basis for its decision. The Third Circuit recently stated:

> The plan administrator's duty to administer a plan for the sole benefit of its participants is qualified by his obligation to interpret a plan consistent with the documents and instruments governing the plan. 29 U.S.C. § 1104(a)(1)(D); <u>O'Neil v. Retirement Plan for Salaried Employees of RKO Gen., Inc.</u>, 37 F.3d 55, 61 (2d Cir. 1994) (explaining that the plan administrator is not obligated to "resolve every issue of interpretation in favor of the plan beneficiaries").

McElroy, slip op. at 5.

Consequently, the Court affirms Defendant's denial of benefits under the heightened arbitrary and capricious standard of review.

### 1. Alleged Denial of Plaintiff's Claim Without Review of All Medical Evidence

Plaintiff's claim that the Defendant denied him benefits without reviewing all his medical records is unpersuasive. A decision to deny disability benefits based on inadequate information may be a procedural anomaly and indicative of arbitrariness. Friess v. Reliance Standard Life Ins. Co., 122 F. Supp. 2d. 566, 574 (E.D. Pa. 2000). In the instant case, however, Defendant had sufficient medical information on which to base its denial.

Though Defendant had not received or reviewed medical records from Dr. Yermak or Ms. Grossner when it rejected Plaintiff's disability claim on September 7, 2001, it had reviewed medical records from Dr. Nuschke and Dr. Primelo, the two doctors who submitted letters of support for Plaintiff's application. (Def.'s Mem. Opp'n Pl.'s Mot. Partial Summ. J. at 2.) Dr. Esther Gwinnell, the Defendant's psychiatric consultant on Plaintiff's claim, felt the records from Dr. Nuschke and Dr. Primelo provided enough information about Plaintiff's condition to allow her to make a judgment about his claim. Id. at 3. Defendant reviewed more than seven months worth of psychiatric records from Dr. Primelo, including his evaluation of Plaintiff's psychiatric history, prior to making its initial denial in September 2001. (Def.'s Mot. Summ. J., Ex. 1 at 278-96.) In addition, Dr. Nuschke provided nearly two years of medical records dating back to May 1999, many of which evaluated his psychological condition. Id. at 302-12. While it may have been preferable for Defendant to review medical records from all of Plaintiff's treating physicians prior to rejecting Plaintiff's claim, failing to do so was not arbitrary and capricious

given the volume of medical information Defendant reviewed prior to September 7, 2001.

Moreover, denying Plaintiff's claim without Dr. Yermak's or Ms. Grossner's records does not constitute procedural error so egregious as to require a highly skeptical review of the denial. Defendant accepted all additional medical information sent by Plaintiff between November 2001 and February of 2002, including psychological records from Dr. Yermak and Ms. Grossner. At the time of Defendant's February 2002 denial of benefits, Defendant possessed and Dr. Gwinnell had evaluated all of Plaintiff's relevant medical records. Id. at 475. The Quality Assurance Unit also considered all Plaintiff's medical information when it reviewed the case. (Def.'s Mem. Supp. Mot. Summ. J. at 19-20; Def.'s Mem. Opp'n Pl.'s Mot. Partial Summ. J. at 3.) Plaintiff contends that Defendant's decision in September 2001 reflects the arbitrary character of the review. Defendant's subsequent decisions after review of additional records corrected any taint of arbitrariness on the initial denial. Consequently, this allegation is not a procedural irregularity that pushes the Court to the "far end of the arbitrary and capricious 'range.'" Pinto, 214 F.3d at 394.

### 2. Alleged Failure to Consider the Impact of Stress on Plaintiff's Ability to Work

Plaintiff contends that Defendant's denial was arbitrary because it failed to consider the stress of Plaintiff's job and its effect on Plaintiff's health in evaluating his claim. Plaintiff argues that stress was an integral part of his Own Occupation, as defined under the Policy, and that any fair review of his case would have had to address the question of whether Plaintiff's psychological conditions prevented him from performing his high stress job. (Pl.'s Mem. Supp. Mot. Partial Summ. J. at 14.)

In her deposition, Dr. Gwinnell contradicted Plaintiff's allegation that Defendant did not

consider stress in its review of his case. She stated that she was aware that Plaintiff's job was stressful but had concluded that this stress did not exacerbate his bipolar or post-traumatic stress disorders. (Pl.'s Mot. Partial Summ. J., Ex. D at 32-34.) She reasonably based her opinion on the fact that Plaintiff had "a history of bipolar disorder since the age of 20 but has been doing this job for 20 years without clear-cut exacerbations of his bipolar disorder." Id. at 34. In addition, the record shows that Linda Wheeler discussed the effect of job stress on Plaintiff's health with Dr. Gwinnell as part of the Quality Assurance Unit's review. (Def.'s Mot. Summ. J., Ex. 1 at 563.) In light of such evidence, no jury could reasonably find that Defendant did not consider the effect of stress on Plaintiff's ability to work.

### 3. Crediting Opinions of Non-Treating Physicians Over Those of Treating Physicians

Plaintiff alleges that Defendant improperly weighed opinions of non-treating physicians over those of treating physicians. The Supreme Court recently held that administrators of disability plans "are not obliged to accord special deference to the opinions of treating physicians." Black & Decker Disability Plan v. Nord, ___ U.S. ___, 123 S. Ct. 1965, 1967, 155 L. Ed. 2d 1034 (2003). Moreover, this Court has previously held that, where a disability insurance policy does not specify whether the insurer can rely on the opinions of medical professionals who have not seen, spoken, or examined claimants, reliance on the review of non-treating physicians is not a procedural abnormality that demands a heightened level of scrutiny. See Sapovits, 2002 WL 31923047 at *15-16. To contest this proposition, Plaintiff relies largely on case law that this Court previously considered in making its holding in Sapovits. See id. at *14-15 (finding Skretvedt v. DuPont, 268 F.3d 167 (3d Cir. 2001), and Holzschuh v. Unum Life Ins. Co., No. CIV.A.02-1035, 2002 WL 1609983 (E.D. Pa. July 18, 2002), "not persuasive or

-11-

controlling" on this question). Plaintiff's attempt to distinguish <u>Sapovits</u> factually from the instant case also is unpersuasive. (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 11-13.) Thus, as a matter of law, Defendant's reliance on the medical records of Plaintiff's treating physicians and on the opinions of a non-treating physician was neither a procedural abnormality that raises the level of scrutiny nor an arbitrary and capricious action.

### 4. Obtaining a Vocational Report that Failed to Account for the Stress of Plaintiff's Job

Plaintiff argues that Defendant's vocational report of his job did not accurately describe his Own Occupation because it failed to note that his job was stressful. (Pl.'s Mem. Supp. Mot. Partial Summ. J. at 22.) Though the Job Description Report for Plaintiff's job does not include stress, (Def.'s Mot. Summ. J., Ex. A at 390-91), the Court has concluded above that no reasonable jury could find that the Defendant did not consider the stress of Plaintiff's job in making its decision to deny benefits. Plaintiff's real complaint is not that Defendant failed to consider the stress of his job, but rather that it was mistaken about the effect of that job stress. Such an objection is more appropriately considered as part of Plaintiff's allegation that Defendant misinterpreted the medical evidence.

### 5. Alleged Misinterpretation of Medical Charts

Finally, Plaintiff argues that Defendant's denial was arbitrary and capricious because it was based on misinterpretations of Plaintiff's medical charts. Plaintiff claims that Defendant "cherry picked" information from the chart notes in order to paint a false picture of improved mental health. (Pl.'s Mem. Supp. Mot. Partial Summ. J. at 24.) In addition, Plaintiff alleges that Defendant misread the chart notes and sacrificed their actual meaning. <u>Id.</u> These claims are unpersuasive.

The Court has found no evidence of procedural abnormalities in any of Plaintiff's allegations that require a heightened level of skepticism. "The intensity of the scrutiny, therefore, should be moderate and the Court concludes it should be deferential to Defendant's determination." Sapovits, 2002 WL 31923047 at *16. The Court is not free to substitute its own judgment for that of the Defendant's. Smathers, 298 F.3d at 199. Under this standard of review, the chart notes gave Defendant a reasonable basis to conclude that Plaintiff was not permanently disabled.

The notes clearly show that Plaintiff's condition improved in response to psychological and medical treatment. Chart notes from Dr. Yermak, Dr. Primelo, and Ms. Grossner consistently report during 2000 and 2001 that Plaintiff's emotional state was stable and improving. (Def.'s Mot. Summ. J., Ex. A at 286-97, 433-39, 448-71.) They show that Plaintiff was sleeping better and feeling generally less anxious and depressed. Id. Though terminating employment in his stressful job almost certainly contributed to this improvement, the medical charts show that Plaintiff felt better even before leaving his job. For example, in September 2000, two weeks before he stopped working, Plaintiff reported to Dr. Yermak that he felt better than he had in 30 years. Id. at 439.

Such evidence of improvement is reasonable support for denial of long-term disability benefits. See Cimino v. Reliance Standard Life Ins. Co. v. PHN Packaging Systems, No. CIV.A.00-2088, 2001 WL 253791, at *5-6 (E.D. Pa. Mar. 12, 2001) (granting summary judgment where doctor's chart notes showed that insured had improved after nervous breakdown and responded to medication). Plaintiff relies on Skretvedt for the proposition that such improvement does not preclude the possibility that he remains disabled from his Own Occupation. (Def.'s Mem. Supp. Mot. Summ. J. at 27-29.) In Skretvedt, the Third Circuit found

the insurer's denial of disability benefits arbitrary and capricious because the insurer ignored the medical opinions of several treating physicians who contemporaneously and unanimously concluded that the insured was unable to work. 268 F.3d at 178-79. The instant case is distinguishable. In Skretvedt, the insurer seized upon one sentence in a doctor's letter that noted the plaintiff's health had improved and ignored the portions of the letter stating that the plaintiff was disabled. Id. at 178. The contemporaneous medical evidence at issue here gave no comparably clear opinion about the permanence of Plaintiff's disability, but rather supported the view that Plaintiff's health had improved considerably and might continue to improve. Though the letters from Plaintiff's doctors stated that Plaintiff was disabled, Defendant was justified in relying on the information in Plaintiff's contemporaneous treating physician chart notes over the physician letters written after Plaintiff filed his disability claim. See Hevener v. Paul Revere Life Ins. Co., No. CIV.A.02-415, 2002 WL 1969492, at *5 (E.D. Pa. Aug. 26, 2002) (relying on contemporaneous medical chart notes over letter written by treating physician after initial denial of benefits).

   The treating physician notes also introduced the possibility that Plaintiff made a *choice* to leave his job, rather than leaving due to medical necessity. Dr. Nuschke's notes of July 28, 2000 state that Plaintiff was "[a]nticipating changing careers in the not too distant future." (Def.'s Mot. Summ. J., Ex. A at 307.) In May 2000, Dr. Nuschke noted that Plaintiff seemed "to be gearing down and looking to a more docile lifestyle." Id. at 305. In July 1999, Dr. Nuschke reported that Plaintiff was "considering either altering his current employment or looking for a new job situation." Id. at 302. Dr. Yermak reported that Plaintiff was cutting back on the hours he worked in June 2000. Id. at 435. Finally, Ms. Grossner discussed Plaintiff's "retirement" with him during their counseling sessions. Id. at 451, 453. Although these notes confirm that

Plaintiff's job caused him significant stress, they also show that he made voluntary choices in dealing with it.

Despite Plaintiff's allegations of "cherry picking," there was ample evidence in the chart notes to support Defendant's denial of benefits. The charts from every one of Plaintiff's doctors are peppered throughout with positive descriptions of Plaintiff's health, such as "improved," "doing well," and "emotionally OK." (Def.'s Mot. Summ. J., Ex. A at 289-92, 295-96, 302, 307, 438-39, 449-55.) Given the consistency of such references in the record, the allegation of "cherry picking" is unfair. Considered as a whole, the contemporaneous medical records provide support for the conclusion that Plaintiff's health improved considerably with treatment.

This Court cannot consider the letters of December 2002 from Dr. Primelo and Ms. Grossner stating that the Defendant misinterpreted their chart notes referring to Plaintiff's improvement and his "retirement." (Pl.'s Mot. Partial Summ. J., Ex. E-F.) Because the Plaintiff did not provide these letters to the Defendant during the review of Plaintiff's claim, the Court cannot weigh them in its review of Defendant's denial. Smathers, 298 F.3d at 199. These letters notwithstanding, Defendant's interpretations of the chart notes were perfectly reasonable and supported its decision.

## IV. Conclusion

For the reasons discussed above, the Court finds that there are no genuine issues of material fact for trial. Defendant points to sufficient evidence in the record to establish that the denial of benefits was not arbitrary or capricious as a matter of law. Therefore, the Court will grant Defendant's Motion for Summary Judgment, deny Plaintiff's Motion for Partial Summary Judgment, and judgment will be entered in favor of Defendant and against Plaintiff.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS P. SWEENEY, | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| THE STANDARD INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | NO. 02-4043 |

**ORDER**

AND NOW, this 13th day of August, 2003, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 19); Plaintiff's Motion for Partial Summary Judgment (Doc. No. 20); Plaintiff's Response to Defendant's Motion (Doc. No. 21); Defendant's Response to Plaintiff's Motion and Reply (Doc. No. 22); and the oral argument of counsel, it is hereby

ORDERED that Plaintiff's Motion for Partial Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED, and judgment is entered in favor of Defendant and against Plaintiff.

BY THE COURT:

_____
**MICHAEL M. BAYLSON, U.S.D.J.**